# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | Case No. 1512011597 |
| v. | ) | |
| | ) | |
| FAHEIM JONES, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 26, 2016
Decided:  June 2, 2016

Upon Defendant Faheim Jones' Motion to Suppress – Search and Seizure
***DENIED***

Julie A. Finocchiaro, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State of Delaware.*

Robert M. Goff, Esquire, Assistant Public Defender, Public Defender's Office, Wilmington, Delaware, *Attorney for Defendant.*

**DAVIS, J.**

On April 8, 2016, Defendant Faheim Jones filed his Motion to Suppress – Search and Seizure (the "Motion").  The Motion seeks to suppress items collected from Mr. Jones' residence, 291 Harbor Drive Apt. C (the "Residence"), during a search executed pursuant to a warrant (the "Warrant") issued by the Justice of the Peace Court 11. Using the Warrant, officers from the New Castle County Police Department ("NCCPD") searched and seized items alleged to have been stolen in a series of burglaries committed at Mr. Jones' residential complex. The State filed its State's Response to Defendant's Motion to Suppress – Search and Seizure on May 24, 2016.  On May 26, 2016, the parties notified the Court that a hearing on the Motion and Response was not necessary as the parties were in agreement that the Motion could be decided on the papers.  For the reasons set forth below, the Motion is **DENIED**.

# BACKGROUND

## FACTUAL BACKGROUND[1]

On December 14, 2015, NCCPD officers responded to three separate burglary reports within the Harbor House Apartment complex, in Claymont, New Castle County, Delaware.[2] Officers Scullion, Annone, and Morris responded to burglaries reported at 141 Harbor Drive Apt. 6, 91 Harbor Drive Apt. 2, and 281 Harbor Drive, respectively.[3]

The burglary at 141 Harbor Drive Apt. 6 occurred at 2:00 p.m.[4] Officer Scullion interviewed the victim of this burglary. The victim said that he found the suspect in Apt. 6 and described the suspect as a black male "dressed in dark clothing."[5] Officer Scullion interviewed another witness who saw the victim chase the suspect out of Apt. 6. The witness described the suspect as follows:

> "... black male, 5'6 to 5'7, with a stocky build. ... [T]he suspect had a milk chocolate skin color, was wearing a gray hoodie, and black cargo type pants. [These] pants were baggie and the legs were 'rolled up.'"[6]

The second burglary at 91 Harbor Drive Apt. 2 occurred sometime between 10:00 a.m. and 1:00 p.m. In this instance, the suspect entered the victim's apartment through an entrance created by "kicking a hole through the dry wall."[7] While canvassing for witnesses to the burglary at 91 Harbor Drive Apt. 2, Officer Annone found a witness to the burglary. The witness

---

[1] The parties agree that the Court should apply a "four corners" test in deciding whether to suppress the evidence in this case. As discussed below, the Court is only to look to the facts contained in the search warrant and the supporting affidavit when applying a "four corners" test. Accordingly, all the facts in this memorandum opinion and order come from the warrant and the supporting affidavit.

[2] Warrant at ¶¶ 2, 5, 8.

[3] *Id.*

[4] *Id.* at ¶ 2.

[5] *Id.*

[6] *Id.* at ¶ 3.

[7] *Id.* at ¶ 5.

2

provided the following description of the suspect in that burglary:

> "... *a light skinned black male, wearing a black knit hat, a cream colored sweat shirt, black sweat pants, and light blue sneakers was ... kicking at the victim's front door.*"[8]

The third burglary happened at 281 Harbor Drive.[9] NCCPD did not find any witnesses to this burglary. The burglary at this address occurred sometime between 8:00 a.m. and 6:30 p.m.[10]

According to the Warrant, the Court calculated the total estimated value lost from the three burglaries to be $2,447.70.[11]

Detective Bancroft Cunningham of the NCCPD is the Warrant's affiant.[12] On December 15, 2015, Detective Cunningham spoke with the residential managers for the Harbor House Apartments.[13] The managers recalled a man of the following description having approached them on December 14, 2015, at 12:00PM, offering to do handy work on the premises:

> "... *a light skin black male, in a light colored hoodie, black cap, and black cargo pants (pants legs rolled up)...*"[14]

The managers also stated that the man lived in the complex, at 291 Harbor Drive Apt. 6.[15]

Detective Cunningham then conducted a CJIS/DELJIS inquiry and determined that Mr. Jones resided at 291 Harbor Drive Apt 6 – the Residence.[16] Detective Cunningham provided a photo of Mr. Jones to the property managers and asked the property managers if they recognized Mr. Jones.[17] The property managers said that the photo matched the man who had inquired

---

[8] *Id.* at ¶ 6.
[9] *Id.* at ¶ 8.
[10] *Id.*
[11] *Id.* at ¶¶ 4, 5, 8.
12 Id. at ¶ 1.
[13] *Id.* at ¶ 9.
[14] *Id.*
[15] *Id.*
[16] *Id.* at ¶ 10.
[17] *Id.*

3

about work on December 14, 2015.[18]

Detective Cunningham concludes the Warrant's affidavit concludes with a list of his own observations. Detective Cunningham notes that Mr. Jones matches the physical characteristics described by the witness in the 141 Harbor Drive Apt. 6 burglary.[19] Detective Cunningham provides that the clothing description provided by the property managers matches the clothing descriptions offered by the witness to the 141 Harbor Drive Apt. 6 burglary and the 91 Harbor Drive Apt. 2 burglary.[20] Additionally, Detective Cunningham relays that, based on his training and experience, subjects involved in thefts and burglaries sell the stolen property, and may keep records of those transactions on cell phones or computers.[21] Detective Cunningham states that these cell phones and computers may provide other means facilitating the sale of stolen goods as well.[22] Also based on training and experience, Detective Cunningham states that subjects involved in burglaries store stolen goods in their residence, and that they will commit crimes in their own communities because of their familiarity with the community and the relative ease of avoiding detection.[23]

On December 15, 2015, a magistrate judge from Justice of the Peace Court 11 (the "Magistrate") issued the Warrant. The Warrant authorized the search of the Residence.[24] The Warrant provided that NCCPD could search the Residence for the items alleged to be stolen in the three burglaries at the Harbor House Apartments complex, the clothes described by the

---

[18] Id.
[19] Id. at ¶ 11.
[20] Id.
[21] Id. at ¶¶ 12, 13
[22] Id. at ¶¶ 14, 15.
[23] Id. at ¶ 16.
[24] Id. at p. 1.

4

witnesses mentioned above, and numerous burglary tools.[25]

According to the Motion, the NCCPD executed the Warrant at the Residence on December 16, 2015 -- retrieving items alleged to be stolen.[26] The NCCPD took Mr. Jones into custody and questioned about the items found at the Residence.[27] Mr. Jones eventually confessed.[28] The State then charged Mr. Jones with three counts of Burglary Second Degree, Theft, Theft of a Firearm, and Possession of a Firearm by a Person Prohibited.[29]

## THE PARTIES CONTENTIONS

### MR. JONES

Mr. Jones contends that there are no facts in the affidavit to substantially connect him to the burglaries. Moreover, Mr. Jones claims that the affidavit's facts do not make it fairly probable that evidence or stolen goods would be found in the Residence.[30] Mr. Jones argues that the descriptions of the suspect or suspects contained in the affidavit are incomplete and inconsistent.[31] Mr. Jones contends that, within the four corners, none of the witnesses viewed a photograph of Mr. Jones.[32] In addition, Mr. Jones claims that no one said that Mr. Jones was the person he or she saw committing the crime or even that he looked like that person.[33]

### THE STATE

The State contends that the facts in the affidavit are sufficient for the Magistrate to substantially connect Mr. Jones to the burglaries and suggest that the stolen goods could be

---

[25] *Id.*
[26] Motion at ¶ 1.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶ 3.
[31] *Id.* at ¶¶ 5, 6.
[32] *Id.* at ¶ 7.
[33] *Id.*

5

located in the Residence.[34] The State notes that though the descriptions of the suspect differ, and no witness identifies Mr. Jones as the burglar, these differences are not necessarily fatal to a potential reasonable finding of probable cause.[35] The State also contends that Detective Cunningham's statements regarding the typical storage areas of stolen goods—as well as the CJIS/DELJIS inquiry and property-owner testimony linking Mr. Jones to the searched apartment—provide grounds for a determination that it was fairly probable that the stolen goods would be located at the Residence.[36]

## APPLICABLE LEGAL STANDARDS

On a motion to suppress challenging the validity of a search warrant, the defendant has the burden of establishing that a search or seizure violated his rights under the United States Constitution, the Delaware Constitution, or the Delaware Code.[37] The defendant must show he is entitled to relief by a preponderance of the evidence.[38]

Under the Delaware and the United States Constitutions, "a search warrant may be issued only upon a showing of probable cause."[39] Delaware constitutional requirements for search warrants are codified in Title 11, Sections 2306 and 2307 of the Delaware Code. Pursuant to Section 2306, the application for a search warrant must "state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated [in the

---

[34] Response at ¶ 14.

[35] *Id.* at ¶ 20.

[36] *Id.* at ¶ 23.

[37] *State v. Holton*, I.D. No. 1101000487, 2011 WL 4638781, at * 2 (Del. Super. Sept. 22, 2011); *State v. Cannon*, I.D. No. 0701003821, 2007 WL 1849022, at *2 (Del. Super. June 27 2007); *see also Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

[38] *Id.*

[39] U.S. Const. Amend. IV; Del. Const. art. I, § 6; *Sisson*, 903 A.2d at 296.

search warrant application] and shall recite the facts upon which suspicion is founded."[40] Under Section 2307, a warrant may issue only upon a judicial determination of probable cause.[41]

Delaware courts engage in a four-corner's test to make a probable cause determination.[42] Within the four-corners of the search warrant affidavit, the document must present sufficient facts for a judge or magistrate to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.[43]

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... [concluding]' that probable cause existed."[44] When determining whether probable cause to obtain a search warrant exists, the Court will apply a totality of the circumstances test.[45] This analysis allows a judge or magistrate to draw reasonable inferences from the factual allegations within the affidavit.[46] As such, probable cause may exist under the totality of the

[40] 11 *Del. C.* § 2306 (2001) ("The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.").

[41] 11 *Del. C.* § 2307 (2001) ("If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible, and may be returnable before any judge, justice of the peace or magistrate before whom it shall also direct to be brought the person or thing searched for if found, and the person in whose custody or possession such person or thing is found, to be dealt with according to law.").

[42] *Sisson*, 903 A.2d at 296.

[43] *Id.* (*citing* 11 *Del. C.* §2306; *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000)).

[44] *State v. Ivins*, No. 0209016906, 2004 WL 1172351 (Del. Super. May 21, 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)), (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)).

[45] *Sisson*, 903 A.2d at 296 (*citing Fink v. State*, 817 A.2d 781, 787 (Del. 2003)). *See also Gardner v. State*, 567 A.2d 404 (Del. 1989).

[46] *Id.*

circumstances where "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[47]

While the four-corner's test "restricts the scope of a reviewing courts inquiry," the Court is still permitted to use common sense in its analysis.[48] This allows the Court to avoid a hypertechnical approach when reviewing a search warrant.[49] Moreover, the Court must give great deference to the judge or magistrate who initially finds probable cause to issue a search warrant.[50] But, the Court must still determine whether the information provides the judge or magistrate with a substantial basis to find probable cause.[51]

Mr. Jones and the State agree that the Court should apply a four-corner's test to the Warrant.

## ANALYSIS

The Court finds that the Magistrate, in issuing the Warrant, properly formed a reasonable belief that burglaries had been committed at the Harbor House Apartment complex and that Mr. Jones committed those burglaries. In addition, the Court finds that Warrant's affidavit provided sufficient facts for the Magistrate to logically draw an inference that evidence related to the burglaries would be found in the Residence.

This Court reviews the Magistrate's probable cause determination with great deference, considering it as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its separate allegations.[52] This Court does so because "[a] grudging or

---

[47] *Id.* (*citing Stones v. State,* 1996 WL 145775, at *2 (Del.1996) (Order) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
[48] *See Holton,* 2011 WL 4638781, at *3.
[49] *Id.*
[50] *Sisson,* 903 A.2d at 296.
[51] *Holton,* 2011 WL 4638781, at *3.
[52] *Sisson,* 903 A.2d at 296.

8

negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant...."[53] Therefore, this Court's duty is to simply ensure that the Magistrate had a substantial basis for concluding that probable cause existed. Here, the Magistrate had a substantial basis for concluding that under the totality of the circumstances there was a fair probability that Mr. Jones was involved in the burglaries, and that the stolen items may be found in the Residence.

Mr. Jones is correct when he states that the inference that one is a suspect is insufficient on its own to constitute probable cause to search one's house.[54] Probable cause to arrest a suspect does not automatically provide probable cause to search the suspect's residence.[55] However, the Court is not to disregard the inference altogether.[56] Although probable cause to arrest does not automatically provide probable cause to search, the fact that probable cause to arrest has been established increases the likelihood that the arrested person is storing evidence of the crime at the person's residence.[57] The question is whether, based on the facts contained in the warrant, the issuing judge or magistrate could logically infer that one would normally find those items at the residence.[58] The Court's analysis focuses on whether the Magistrate could reasonably find that Mr. Jones was involved in the burglaries and that the stolen goods were likely to be found in the burglar's home – a nexus between Mr. Jones, the stolen goods, and the place to be searched.[59]

---

[53] *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)(quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).
[54] Motion at ¶ 2 (quoting *Dorsey v. State*, 761 A.2d 807, 812-13 (Del. 2000)).
[55] *Dorsey v. State*, 761 A.2d 807, 812 (Del. 2000).
[56] *Id.* at 813.
[57] *Id.*
[58] *Id.*
[59] *Id.; Blount v. State*, 511 A.2d 1030, 1033 (Del. 1986) (citing *Hooks v. State,* 416 A.2d 189, 203 (1980)).

Attacking the credibility of warrant's descriptions that link him to the burglaries, Mr. Jones claims – correctly -- that the suspect descriptions differ.[60] The witness' suspect descriptions differ from one another, and they differ from the property manager's description of Mr. Jones during the day and time of the burglaries.[61] The discrepancies between the witnesses' descriptions of the suspect, however, are minor and, upon viewing them as a whole, the descriptions coalesce very nearly into the property manager's description of Mr. Jones.

The State points out that the Supreme Court followed this holistic approach in *Blount v. State*, and found the warrant in that case valid.[62] There, the Supreme Court upheld the issuing judge's basis for finding of probable cause despite the various suspect descriptions differing on certain details -- with some not describing details that others noticed.[63] Applying a common-sense approach[64] and viewing the warrant "as a whole,"[65] the Court applies the analysis found in *Blount*, and finds that the warrant had sufficient facts for the Magistrate to reasonably believe that Mr. Jones was involved in the burglaries.

The Court notes that the Warrant does not fail merely because the witnesses did not identify Mr. Jones as the burglar.[66] The standard for finding probable cause is not as high as the standard for evidence to convict – fair probability versus beyond a reasonable doubt.[67] Though such evidence would be helpful, it is not required.[68] Instead, the Court needs only to determine

---

[60] Motion, Ex. A at 5-6.
[61] *Id.*
[62] *Blount*, 511 A.2d at 1032.
[63] *See Id.*
[64] *Gardner v. State*, 567 A.2d 404 (Del. 1989), (citing *Tatman v. State*, 494 A.2d 1249, 1251-52 (Del. 1985)); *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984); *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).
[65] *Gardner*, 567 A.2d at 409 (quoting Jensen, 482 A.2d at 111).
[66] *See Blount*, 511 A.2d at 1034 (finding issued warrant valid despite two witnesses being unable to identify the suspect as the defendant).
[67] *Id.*; *State v. Holden*, 60A.3d 1110, 1115 (Del. 2013).
[68] *Id.*

10

whether the Magistrate could "form a reasonable belief" from the facts in the warrant.[69]

Reviewing the four corners of the Warrant, the Court does find that the Magistrate could form a reasonable belief that there was a fair probability that Mr. Jones committed the burglaries from the following: the witnesses' descriptions of the suspect; the property managers' description of the person looking for work and his place of residence; and the CJIS/DELJIS inquiry that determined Mr. Jones resided at location identified by the property managers.

Detective Cunningham's statements regarding his experiences with burglaries provide the Magistrate with facts that support the logical inference that the stolen goods are likely to be found at the home of the burglar-suspect.[70] The testimony of the property managers, as well as the CJIS/DELJIS search, ties the Residence to Mr. Jones. Because the Warrant contains reasonable facts to tie Mr. Jones to the burglaries and facts that support the logical inference that the stolen goods would normally be found in the home of the burglary suspect, the Court finds that the Magistrate properly issued the Warrant to search Mr. Jones' home.[71]

## CONCLUSION

Under the totality of the circumstances, taking all reasonable inferences to be drawn from the facts alleged in the Warrant, the Court holds that the information contained in the four-corners of the Warrant sets forth probable cause that Mr. Jones was involved in the Harbor House Apartment complex burglaries, and that the stolen goods would be found in the Residence. On this record, the Magistrate was presented with a substantial factual basis for

---

[69] *Morgan v. State* 962 A.2d 248, 252 (Del. 2008) (quoting *LeGrand v. State*, 947 A.2d 1103, 1107 (Del. 2008)).

[70] *Blount*, 511 A.2d at 1033 (quoting *Hook v. State*, 416 A.2d 189, 203 (1980))(*"'The question is whether one would normally expect to find those items at that place.... If so, then that inference will suffice to allow the valid issuance of a search warrant for that place . . .'"*).

[71] *See, e.g., Blount*, 511 A.2d at 1032-33 (finding an issued warrant valid, in part, because defendant's home would be a logical place for the evidence to reside).

making that conclusion. As such, this Court will not disturb the decision of the Magistrate.

Based on the arguments above and applicable standards of review, this Court finds that Mr. Jones has not carried his burden with respect to the validity of the Warrant. Therefore, the Motion is hereby **DENIED**.

Dated: June 2, 2016
Wilmington, Delaware

/S/Eric M. Davis
Eric M. Davis, Judge

cc:     Prothonotary
        Julie A. Finocchiaro, Esq., Deputy Attorney General
        Robert M. Goff, Esq.